IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICKIE MCCLAIN,                          )
                                         )
                                         )          2:20-CV-01485-CCW
                   Plaintiff,            )
                                         )
          v.                             )
                                         )
CONNELLSVILLE SCHOOL DISTRICT,           )
                                         )
                   Defendant.            )
                                         )
                                         )
                                         )

## MEMORANDUM OPINION

### I.   Introduction

In this employment discrimination case, Plaintiff claims that her employer, Defendant Connellsville School District, discriminated against her on the basis of sex, subjected her to a "sexually hostile work environment" and "sexual harassment," and retaliated against her for speaking out against such conditions, in violation of Title VII of the Civil Rights Act of 1964 as amended. *See* ECF No. 23 at ¶¶ 9, 35. Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 25. For the reasons set forth below, Defendant's Motion will be GRANTED IN PART and DENIED IN PART.

### II.   Factual Background

The facts as alleged in the Amended Complaint are as follows. Plaintiff has worked for Defendant since 2003 and is currently a clerk. ECF No. 23, at ¶ 8. In 2015, Plaintiff broke off a romantic relationship with Michael Parlak, Defendant's Director of Security. *Id*. at ¶¶ 10–11. Mr. Parlak became "increasingly verbally abusive and extremely hostile while in the workplace" when Plaintiff ended their relationship. *Id*. at ¶ 11. He would "obsessive[ly]" monitor her movements

via the Defendant's security system and inquire about her interactions with male colleagues "frequently." *Id*. at ¶15. Though Plaintiff does not allege that Mr. Parlak ever supervised her, she claims that he "exercised the powers of his authority to sexually harass" her. *Id*. at ¶ 12. Plaintiff filed a complaint about Mr. Parlak's behavior with the Defendant District in or around June 2015.[1] *Id*. at ¶ 13. Plaintiff's June 2015 complaint expressed her fears for her safety relating to Mr. Parlak's behavior. *Id.* at ¶ 13. Despite Plaintiff's June 2015 complaint, Mr. Parlak's behavior remained "unchecked" and his conduct "continued to [sic] several years during which time Plaintiff was harassed and demeaned by Mr. Parlak on a regular basis." *Id.* at ¶¶ 14, 16.

Sometime in October 2019, Plaintiff complained to the principal of Defendant's high school, Nicholas Bosnic, because Mr. Parlak was still using the Defendant's security system to monitor Plaintiff's activities. *Id*. at ¶ 17. However, Defendant did not discipline Mr. Parlak in any way. *Id.* at ¶ 18. On October 22, 2019, Mr. Parlak "publicly berated the Plaintiff regarding her job performance," accused her of engaging in activities outside the scope of her job duties, and "proceeded to verbally abuse the Plaintiff for a perceived act of insubordination." *Id*. at ¶¶ 19–20. Two days later, Plaintiff reported Mr. Parlak's harassment to the Defendant. *Id*. at ¶ 22. Defendant District did not discipline Mr. Parlak. *Id*. at ¶ 23.

In the Amended Complaint, Plaintiff asserts that Defendant discriminated against her based on sex and subjected her to a "sexually hostile work environment" (Count I, Titled "Sexual (Gender) Discrimination");  created a "sexually hostile work environment" (Count II, Titled "Sexual Harassment");  and retaliated against her for complaining about Mr. Parlak's conduct by, for example, passing her over for promotions and other advancement opportunities (Count III, Titled "Retaliation"), all in violation of Title VII.  ECF No. 23.  Finally, she contends that

---

[1] Neither the Complaint, ECF No. 1, nor the Amended Complaint, ECF No. 23, included a copy of Plaintiff's June 2015 complaint or information about how Plaintiff submitted that complaint.

Defendant discriminated against her based on her sex, created a hostile work environment, and retaliated against her in violation of the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 955(1) ("PHRA") (Count IV).[2]  *Id.*

Defendant seeks to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state an actionable claim.  *See* ECF Nos. 25 and 26.

### III.   Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to

---

[2] The Court has supplemental jurisdiction over the PHRA claim pursuant to 28 U.S.C. § 1367 because the claim is so related to the Title VII claims that it forms part of the same case or controversy.  28 U.S.C. § 1367(a);  *see also Strang v. Ridley Sch. Dist.*, Civil Action No. 03-4625, 2004 U.S. Dist. LEXIS at *9–10 (E.D. Pa. Oct. 14, 2004).

> the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

### IV.    Discussion

### A.  Certain Portions of Plaintiff's Claims Must be Dismissed as Untimely

Defendant argues that portions of Counts I, III, and IV are untimely insofar as they allege that Defendant paid Plaintiff less than Defendant's designated clerical pay rate and passed her over for promotions before October 2019.  *See* ECF No. 26 at 12–14.  "In Pennsylvania, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice.  A claim filed beyond this 300-day lookback period is time-barred."  *Donahue-Cavlovic v. Borough of Baldwin*, Civil Action No. 2:15-cv-1649, 2017 U.S. Dist. LEXIS 177493, at *11 (W.D. Pa. Oct. 26, 2017) (citing *Noel v. Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010)) (internal citations omitted); *see also*, 42 U.S.C. § 2000e-5(e)(1).  In addition to disparate treatment claims, the 300-day lookback period also applies to claims of retaliation under Title VII.  *Donahue-Cavlovic*, 2017 U.S. Dist. LEXIS 177493, at *32.  However, a Title VII hostile work environment claim is timely if any of the acts in the pattern that comprises the hostile work environment occurred within the 300-day lookback period.  *Donahue-Cavlovic*, 2017 U.S. Dist. LEXIS 177493, at *21.

Plaintiff filed her charge of sex discrimination and retaliation with the EEOC on January 14, 2020, *see* ECF No. 26-1;  300 days before that day is March 20, 2019.  Yet the Amended Complaint includes allegations that Defendant passed over Plaintiff for promotions three times

between June 2015 and October 2019 and underpaid her for the 2017–2018 and 2018–2019 school years, some of which are outside the 300-day window.  *See* ECF No. 23, at ¶¶ 26–27.

Plaintiff alleges that the older conduct, such as the lost promotions and underpayment, is not untimely because it constitutes an ongoing pattern of discrimination under the continuing violation doctrine.  *See* ECF No. 27, at 8–9.  Under that doctrine, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim;  such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'"  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *O'Connor v. City of Newark,* 440 F.3d 125, 127 (3d Cir. 2006)).   "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period."  *Mandel*, 706 F.3d at 165–66.   In distinguishing continuing violations from isolated occurrences, the United States Court of Appeals for the Third Circuit considers the subject matter and frequency of the underlying acts.  *Mandel*, 706 F.3d 165 (noting that before the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), Third Circuit courts also considered the degree of permanency as established in *Berry v. Bd. of Supervisors*, 715 F.2d 971 (5th Cir. 1983), but *Morgan* overruled *Barry* with respect to the permanency inquiry.).

However, "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Suero v. Motorworld Grp., Inc.*, 3:16-cv-00686, 2017 U.S. Dist. LEXIS 13286, at *24 (M.D. Pa. Jan. 31, 2017) (quoting *Mandel*, 706 F.3d at 165).  "Consequently, allegations of unlawful 'termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training [and] wrongful accusation'

are considered discrete acts and thus are not subject to aggregation under a continuing violations theory. *Suero*, 2017 U.S. Dist. LEXIS 13286, at \*24–25 (quoting *O'Connor*, 440 F.3d at 127).

The Amended Complaint alleges that Defendant passed over Plaintiff for promotions "consistently" and on three occasions between 2015 and October 2019, but it does not provide any additional temporal specificity. *See* ECF No. 23, at ¶¶ 25–26. To the extent that Plaintiff's discrimination and retaliation claims under Title VII and the PHRA relate to lost promotions before March 20, 2019, they are untimely. Similarly, Plaintiff claims that the Defendant discriminated and/or retaliated against her by underpaying her for the 2017–2018 and 2018–2019 school years. ECF No. 27. Under *Bazemore v. Friday*, 478 U.S. 385 (1986) and as affirmed by *Morgan*, 536 U.S. at 112, each discriminatory paycheck is a separate discriminatory act that could give rise to a Title VII action, and therefore, the continuing violation doctrine does not apply to discriminatory paychecks. *See also*, *Mikula v. Allegheny Cty*, 583 F.3d 181, 185 n.2 (2009). Even if Defendant underpaid Plaintiff because of her sex or in retaliation for complaining about sexual harassment, Plaintiff's allegations about the 2017–2018 school year are untimely because she did not file an EEOC complaint within 300 days of her last paycheck or that school year. However, her allegations that she was unlawfully underpaid as to paychecks for the 2018-2019 school year are timely with respect to paychecks received on or after March 20, 2019. Therefore, Plaintiff's allegations in Counts I, III, and IV that she was paid less because of her sex or in retaliation for protected activity, are dismissed as to paychecks before March 20, 2019. Similarly, Plaintiff's allegations in Counts I, III, and IV that she was passed over for promotions because of her sex or in retaliation for protected activity, are dismissed as to alleged missed promotions before March 20, 2019 only.

**B.   Analysis of Plaintiff's Claims in Counts I and II**

In Count I of the Amended Complaint, which Plaintiff has titled "Sexual (Gender) Discrimination," Plaintiff asserts that Defendant discriminated against her based on sex by treating her differently from her male colleagues, and subjected her to a "sexually hostile work environment." *See* ECF No 23, at Count I and ¶ 34.  In Count II of the Amended Complaint, which Plaintiff has titled "Sexual Harassment," Plaintiff again asserts that Defendant subjected her to a "sexually hostile work environment." *See id.* at Count II and ¶ 41.  The Amended Complaint is confusingly pled and, in various places, does not track the terms used in Title VII.  The Court's best reading of Counts I and II is that Plaintiff is attempting to pursue a claim for disparate treatment discrimination based on sex (part of Count I);  and a claim for hostile work environment based on sex/sexual harassment (part of Count I and all of Count II).  The Court will analyze each of these claims in turn.

**1.   Disparate Treatment Discrimination Based on Sex**

Part of Count I alleges that Defendant discriminated against Plaintiff on the basis of sex because she was "treated differently than male employees." *See* ECF No. 23 at ¶ 34.  Plaintiff asserts that "Defendant District's actions, from in or about 2015 until the present, indicate a continuous course of discriminatory conduct towards female employees, and the Plaintiff specifically." ECF No. 23 at ¶ 31.

Title VII retaliation and sex discrimination claims are controlled by the well-established *McDonnell-Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973);  *Tourtellotte v. Eli Lilly & Co*., 636 Fed. Appx. 831 (3d Cir. 2016).  To establish disparate treatment  discrimination based on sex by a current employer, a plaintiff must make out a *prima facie* case of discrimination; i.e., she must demonstrate that:  (1) she is a member of a protected class;  (2) she was qualified for the position in question;  (3)  her employer subjected

her to an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *See McNamara v. Susquehanna Cty.*, Civil Action No. 3:17-cv-02182, 2018 U.S. Dist. LEXIS 79471, at *7 (M.D. Pa. May 11, 2018); *see also, Hobson v. St. Luke's Hosp. & Health Network*, 735 F.Supp.2d 206, 213 (E.D. Pa. 2010). Once a plaintiff makes out a *prima facie* case of sex discrimination, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Bowersox v. Pa. Dep't of Corr.*, Civil No. 4:180-cv-000384, 2021 U.S. Dist. LEXIS 32029, at *20–21 (M.D. Pa. Feb. 22, 2021).

To survive a motion to dismiss on a Title VII disparate treatment claim, the plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action." *Sztroin v. PennWest Indus. Truck, LLC*, Civ. A. No, 17-665, 2017 U.S. Dist. LEXIS 162123, at *11 (W.D. Pa. Oct. 2, 2017) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016)). "[D]etailed pleading is not generally required" but the plausibility standard requires that pleading show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs can make out a *prima facie* case of sex discrimination pointing to a similarly-situated individual who is outside the plaintiff's protected class who engaged in the same conduct as the plaintiff but whom the defendant treated more favorably. *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998). Where a plaintiff claims to have suffered disparate treatment but does not refer to any similarly-situated individuals and their similar protected conduct, the plaintiff's allegations are insufficient to state a claim under Rule 12(b)(6). *See e.g.*, *Hobson*, 735 F.Supp.2d at 213; *compare Thomas v. Univ. of Pittsburgh*, Civil Action No. 13-514, 2014 U.S.

Dist. LEXIS 90699, at *15 (W.D. Pa. July 3, 2014) (plaintiff, a female student athlete suspended after being charged with a crime, stated a plausible disparate treatment claim where her complaint referenced four men specific instances where the defendant did not suspend male student athletes who were charged with crimes).

Here, Plaintiff has satisfied the first prong of her *prima facie* case, because she is female, and therefore, a member of a protected class.  Plaintiff has also satisfied the second prong of her prima facie case, because, *inter alia*, the Amended Complaint alleges that she was qualified for at least three promotions that she did not receive.  *See* ECF No. 23, at ¶ 26.  Plaintiff also meets the third prong of a *prima facie* case, that Defendant District subjected her to an adverse employment action.  In the context of Title VII actions, the Third Circuit has defined "adverse employment action" as "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Tucker v. Merck & Co*., 131 Fed.Appx. 852, 855 (3d Cir. 2005) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).  Failure to promote where the plaintiff was qualified for the promotion is a well-established adverse employment action.  *See Suero*, 2017 U.S. Dist. LEXIS 13286, at *24–25.

However, Plaintiff's *prima facie* case of disparate treatment discrimination founders on the fourth prong of the analysis.  The Amended Complaint does not allege facts that support an inference of circumstances giving rise to discrimination.  The Amended Complaint does not identify any other similarly situated employees, nor does it reference facts to support Plaintiff's averment that Defendant treated her differently from males.  Plaintiff merely alleges that "Plaintiff believes, and therefore avers, that male employees are not subjected to such harassment, as described hereinbefore above, nor are male employees subject to a sexually hostile work environment[,]" ECF No. 23, at ¶ 24, and "Defendant District's actions, from in or about 2015

until the present, indicate a continuous course of discriminatory conduct towards female employees, and the Plaintiff specifically[,]" *id.* at ¶ 31.   However, *Twombly* is clear that such a formulaic recitation of the elements of a cause of action is insufficient to state a plausible claim. *Twombly*, 550 U.S. at 555;   *see also, Fisher v. Catholic Soc. Servs.*, Civil Action No. 18-cv-04653, 2019 U.S. Dist. LEXIS 133322, at *14–15 (E.D. Pa. Aug. 8, 2019) (dismissing plaintiff's discrimination claims where plaintiff failed to plead direct evidence of different treatment based on protected class and where plaintiff failed to identify a similarly-situated comparator:   the "threadbare recital" that "other similarly situated white employees" were treated more favorably, without identifying the comparators or how they were similarly situated "is exactly a '[t]hreadbare recital[] of the elements of a cause of action' that *Iqbal* repudiates." (quoting *Iqbal*, 556 U.S at 678)).   Accordingly, the portion of Count I of Plaintiff's Amended Complaint alleging disparate treatment discrimination based on sex must be dismissed for failure to state a plausible claim.

### 2.   Hostile Work Environment Based on Sex/Sexual Harassment

The remainder of Count I and all of Count II of the Amended Complaint allege that Defendant subjected Plaintiff to a "sexually hostile work environment."   *See* ECF No 23, at Count I and ¶ 34;  ¶ 41.   The Title of Count II is "Sexual Harassment."   *See id.* at Count II.

Sexual harassment is a form of sex discrimination that Title VII prohibits.   *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986);   *see e.g., Starnes v. Court of Common Pleas of Butler Cty.*, Civil Action No. 17-1304, 2018 U.S. Dist. LEXIS 125415, at *19 (W.D. Pa. July 26, 2018) (Bissoon, J.).   Actionable sexual harassment comes in two forms:   (1) *quid pro quo*, which occurs where "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998);   and (2) sexual harassment that creates a hostile work environment.   *Sims v. Peace of Mind Living Habilitative*

*Servs., LLC*, 2:19-cv-00413-CRE, 2020 U.S. Dist. LEXIS 99855, at *9 (W.D. Pa. June 5, 2020).

The Amended Complaint alleges the latter type of sexual harassment.  *See generally*, ECF No. 23.

> Hostile work environment claims have five elements:

>> (1) the employee[] suffered intentional discrimination because of [her] sex;  (2) the discrimination was pervasive and regular;  (3) the discrimination detrimentally affected the plaintiff;   (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position;   and (5) the existence of *respondeat superior* liability.

*Kinin v. Sears Roebuck & Co*., 175 F.3d 289, 293 (3d Cir. 1999); *see also*, *Mandel v. M & Q Packaging Corp*., 706 F.3d 157, 167 (3d. Cir. 2013).  Within the sexual harassment context:

> [A] hostile work environment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. . . .  In order to be actionable, the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment.

*Weston v. Pennsylvania*, 251 F.3d 420, 425–26 (3d Cir. 2001);  *see also Sommer v. Greenwood Gaming Servs. Co.*, Civil Action No. 10-2852,  2012 U.S. Dist. LEXIS 103509 (E.D. Pa. July 25, 2012).   In deciding whether an environment is hostile, the court must "look[] at all the circumstances, including the frequency of the discriminatory conduct;  its severity;  whether it is physically threatening or humiliating, or a mere offensive utterance;  and whether it unreasonably interferes with an employee's work performance." *Moody v. Atl. City. Bd. of Educ.*, 870 F.3d 206, 215 (3d Cir. 2017);  *see also Abramson v. William Paterson Coll*., 260 F.3d 265, 280 (3d Cir. 2001).

If, as here, the plaintiff claims that another of the defendant's employees, but not one of plaintiff's supervisors, is the alleged-harasser, the plaintiff must also show that management-level

employees knew or should have known of the harassing conduct. *See* MODEL CIVIL JURY INSTRUCTIONS, 5.15 (3d Cir. July 2019); *see also*, *Dougherty v. Henderson*, 155 F.Supp.2d 269, 280 (E.D. Pa. 2001).

### a) Prong 1: Mr. Parlak's Unwelcome Sexual Conduct

As to the first prong of the hostile work environment analysis, whether plaintiff is an employee who suffered intentional discrimination because of her sex, Defendant argues that because Mr. Parlak allegedly berated Plaintiff about her job performance and activities outside of her job duties, ECF No. 23, at ¶¶ 19–20, Mr. Parlak's conduct is not sexual harassment, i.e., he did not discriminate against her because of her sex, because his comments were never *sexually* offensive. *See* ECF No. 26, at 9. However, sexual harassment "can take on different forms, both overtly sexual and facially neutral." *Hargrave v. Cty of Atl.*, 262 F.Sup.2d 393, 412 (D.N.J. 2003) (quoting *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 598 (M.D. Pa. 2002)). "Offensive conduct need not necessarily include obvious sexual overtones in order to constitute unlawful harassment or discrimination" as long as plaintiff's gender was a substantial factor in the harassment. *Hargrave*, 262 F.2d at 412. Mr. Parlak's statements, though facially neutral with respect to sex, cannot be viewed in a vacuum; Plaintiff alleged that he obsessively monitored her on the Defendant's security cameras, to which he had access as Director of Security. ECF No. 23, at ¶ 15. According to Plaintiff, Mr. Parlak also made frequent inquiries about Plaintiff's interaction with male colleagues. ECF No. 23, at ¶ 15. Taken together with their failed romantic relationship, Mr. Parlak's conduct, even without his express statements, could be seen as unwelcome sexual conduct. *See Sommer*, 2012 U.S. Dist. LEXIS 103509, at *19 (refusing to rule as a matter of law in defendant's favor as to plaintiff's hostile work environment claim where, among other things, defendant's employees followed plaintiff on security cameras).

12

### b) Prong 2:  Pervasiveness and Regularity of the Alleged Harassment

Plaintiff's Amended Complaint is not a model of specificity, but it is sufficient to satisfy the second prong of the hostile work environment analysis.  Plaintiff alleges that Mr. Parlak obsessively monitored Plaintiff's movements for years, and frequently asked about her interactions with male colleagues.  ECF No. 23, at ¶ 15.  Moreover, Plaintiff claims Mr. Parlak demeaned her on a regular basis for several years.  *Id*. at ¶ 16.  The "constant surveillance" is inherently frequent and carries overtones of physical intimidation.   While many employees lack a reasonable expectation of privacy in the workplace, expecting the possibility of being monitored where it is understood that anyone could be monitored at any time is different than an individual knowing she is being singled out for constant surveillance because of a past intimate relationship.

### c) Prongs 3 and 4:  Alleged Harassment Reasonably Affected Plaintiff Detrimentally

With respect to the third prong of the hostile work environment analysis, Plaintiff alleges that as a result of Mr. Parlak's threatening demeanor, she has suffered personally and professionally.  *See* ECF No. 23 at ¶ 29.  At this stage of the litigation, the allegations are also sufficient to meet the "reasonable person" standard in the fourth prong of the analysis.  Based on the pervasiveness of Mr. Parlak's alleged conduct, including monitoring Plaintiff's movements and inquiring as to her interactions with other males, the Court finds that Mr. Parlak's alleged conduct would detrimentally affect a reasonable person in the same position.

### d) Prong 5:  Respondeat Superior

In order to recover against Defendant District for the hostile work environment that Plaintiff claims Mr. Parlak's conduct caused, she must also allege the existence of *respondeat superior* liability, *i.e.,* that the employer "knew or should have known of the harassment and failed

to take prompt remedial action." *Andrews v. City of Phila.*, 895 F.2d 1469, 1486 (3d Cir. 1990); *Kinin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). The Amended Complaint alleges that "Plaintiff filed a complaint with Defendant District in or about June of 2015, in which she detailed Mr. Parlak's harassing behavior and disclosed her fears for her safety in relation to that behavior. However, Mr. Parlak's offensive conduct continued, unchecked by Defendant District." ECF No. 23 at ¶¶ 13–14. The Amended Complaint further alleges that, around October 2019, Plaintiff complained "about Mr. Parlak's constant surveillance of her activities through the Defendant District's security system" to the high school principal of Defendant District, Nicholas Bosnic. ECF No. 23 at ¶ 17. The Amended Complaint claims that "[d]espite this complaint, Defendant District failed to discipline Mr. Parlak in any way for his inappropriate and unprofessional behavior." ECF No. 23 at ¶ 18. Plaintiff alleges that Mr. Parlak berated her about her job performance on October 22, 20219 and she "reported Mr. Parlak's ongoing harassment to Defendant District" but that "Defendant District failed to discipline Mr. Parlak[.]" ECF No. 23 at ¶¶ 22–23. These allegations, taken as true for the purposes of Defendant's Motion, show that Defendant District had actual knowledge of the alleged harassment, and failed to address it. Such allegations are sufficient to allege *respondeat superior*.

The Court finds Plaintiff's claim for hostile work environment based on sex/sexual harassment to be plausible. Therefore, Defendant's Motion to Dismiss is denied with respect to the portion of Count I alleging a "sexually hostile work environment," and with respect to all of Count II, which alleges the same claim of a "sexually hostile work environment."

### C. Plaintiff's Claim that Defendant Retaliated Against Her for Complaining About Mr. Parlak's Conduct Fails

Count III of the Amended Complaint alleges that Defendant unlawfully retaliated against Plaintiff for complaining about Mr. Parlak sexually harassing her, by paying her less for the 2017–

2018 and 2018–2019 school years and passing her over for promotions for which she was qualified. *See generally*, ECF No. 23, Count III. To state a claim for retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that her employer took adverse action against her; and (3) a causal link between the protected activity and the adverse action. *Anderson v. Boeing Co.*, 693 Fed.Appx. 84, 88 (3d Cir. 2017); *Basri v. Tr. of the Univ. of Pa.*, Civil Action No. 19-4935, 2020 U.S. Dist. LEXIS 229988, at *11 (E.D. Pa. Dec. 8, 2020).

### 1.   Plaintiff Sufficiently Alleges that she Engaged in Protected Conduct

Complaining to an employer about sexual harassment in the workplace is protected activity. *See Motto v. Wal-Mart Stores E, LP*, 563 Fed.Appx. 160, 163 (3d Cir. 2014); *Barber v. CSX Dist. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). "The law is well settled that denial of a promotion constitutes an adverse employment action under Title VII." *Gilbert v. Milton Hershey Sch.*, Civil Action No. 1:16-cv-1798, 2017 U.S. Dist. LEXIS 139500, at *9–10 (M.D. Pa. Aug. 30, 2017); s*ee e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here, Plaintiff alleged that she complained to the Defendant about Mr. Parlak's conduct in 2015 and again in October of 2019. ECF No. 23 at ¶¶ 13, 22. Her complaints are protected conduct. *See Motto*, 563 Fed.Appx. at 163.

### 2.   Plaintiff Sufficiently Alleges that Defendant District Took an Adverse Employment Action Against Her

Plaintiff also alleges that, as a result of her complaints about Mr. Parlak's behavior, Defendant paid her less for the 2017–2018 and 2018–2019 school years, and passed her over for promotions for which she was qualified from June 2015 to October 2019. ECF No. 23 at ¶¶ 25–28. Lost promotions and underpayment are considered to be adverse employment actions. *See Young v. Temple Univ. Hosp.*, 359 FedAppx. 304, 310 (3d Cir. 2009).

For the reasons previously discussed, Plaintiff's claims for retaliation in connection with the paychecks she received and promotions she lost more than 300 days before her charge of discrimination are untimely.  However, she has sufficiently alleged an adverse action with respect to the portion of her retaliation claims relating to paychecks she received and any promotions she lost on or after March 20, 2019.

### 3.   Plaintiff has not Pled a Causal Connection between Her Protected Conduct and the Adverse Employment Actions

Plaintiff alleges that she complained about Mr. Parlak's conduct a total of three (3) times: (1) in June 2015 (without a specific date);  (2) in October 2019 (without a specific date);  and (3) on October 24, 2019.  ECF No. 23 at ¶¶ 13, 17, 22.  She claims that as a result of at least some of these complaints, Defendant District underpaid her for the 2017–2018 school year, the 2018–2019 school year, passed her over for three promotions between June 2015 and October 2019, and denied her other unspecified "advancement opportunities."  ECF No. 23 at ¶¶ 13, 17, 22, 25–27. The Court finds that Plaintiff has not sufficiently alleged a causal connection between her complaints about Mr. Parlak's conduct and her alleged underpayment and missed promotions.

#### a)   Underpayment for the 2018–2019 School Year

As previously discussed, the only alleged adverse employment actions that are timely occurred on or after March 20, 2019.  Since Plaintiff's October 2019 complaints about Mr. Parlak's conduct occurred after she was underpaid for the 2018–2019 school year, her June 2015 complaint is the only alleged potential predicate for her underpayment-based retaliation claim.  And the only fact Plaintiff pleads to support causation is temporal proximity – i.e., that the alleged underpayment occurred after her June 2015 complaint.  *See generally* ECF No. 23.

"If a plaintiff relies on temporal proximity to establish a causal connection, the 'timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive.'"  *Leblank v. Hill*

16

*Sch.*, Civil Action No. 14-1674, 2015 U.S. Dist. LEXIS 2981, at *44 (E.D. Pa. Jan. 12, 2015) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997 (internal citation omitted)). Courts within this Circuit have declined to infer causation based on much shorter time gaps than the almost four (4) years here between the protected activity and adverse events. *See e.g., Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three weeks was not unduly suggestive of retaliatory motive); *Fischer v. Transue*, Civ. A. No. 04-2756, 2008 U.S. Dist. LEXIS 64818, at *10 (M.D. Pa. Aug. 22, 2008) (22-day window is insufficient to infer causation); *Killen v. Northwestern Human Servs.*, Civil Action No. 06-4100, 2007 U.S. Dist. LEXIS 66602, at *8 (E.D. Pa. Sept. 7, 2007) (17-day window is insufficient to infer causation). Here, Plaintiff's alleged underpayment for the 2018–2019 school year occurred between three and four years after the relevant protected conduct, and the Court will not infer retaliatory motive from such a long lapse in time. Count III of the Amended Complaint will be dismissed to the extent that it alleges Defendant retaliated against Plaintiff by underpaying her for the 2018–2019 school year.

### b) Lost Promotions

Plaintiff also claims that Defendant retaliated against her for complaining about Mr. Parlak's conduct by passing her over for promotions. Specifically, Plaintiff contends that she "has been consistently passed over for promotions and denied various other advancement opportunities by Defendant District. By way of example, from in or about June of 2015 until approximately October of 2019, Plaintiff was passed over for at least three (3) promotions for which she was qualified." ECF No. 23 at ¶¶ 26–27. Plaintiff does not provide any additional information regarding these lost promotions or advancement opportunities.

To the extent the missed promotions occurred before March 20, 2019, they are untimely as discussed in Section IV.A. herein, and to the extent that they occurred on or after March 20, 2019,

without more, they were too far removed in time from Plaintiff's June 2015 complaint about Mr. Parlak's conduct for the Court to infer retaliatory motive.  Nor can Plaintiff's "October 2019" or "October 24, 2019" complaints about Mr. Parlak's conduct support her lost promotion retaliation claim, because the Amended Complaint is so vaguely pleaded that it is not possible to discern whether any of the alleged lost promotions occurred after Plaintiff complained about Mr. Parlak's conduct in October 2019.  Therefore, the remainder of Count III, alleging that Defendant retaliated against Plaintiff by passing her over for promotions, will be dismissed.

### D.  Plaintiff's PHRA Claims Survive in Part, Consistent with the Analogous Surviving Title VII Claims

Count IV of Plaintiff's Amended Complaint alleges that Defendant violated the PHRA in addition to Title VII when it subjected Plaintiff to discrimination based on sex, a sexually hostile work environment, and retaliation.  *See* ECF No. 23, at Count IV.  The Court need not address Plaintiff's PHRA claims separately from Plaintiff's Title VII claims because the analysis is the same under the two statutes.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 n.8, n.9 (3d Cir. 2016);  *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 317, n.3 (3d Cir. 2000);  *see also*, *Jackson v. Hoopes Turf Farm*, No. 4:12-cv-01719, 2015 U.S. Dist. LEXIS 44941 (M.D. Pa. Apr. 7, 2015).  Thus, Plaintiff's PHRA claims survive Defendant's Motion to Dismiss the Amended Complaint to the same extent as the analogous Title VII claims survive.

### V.   Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) requires that "[t]he court should freely give leave when justice so requires."  Courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile.  *See e.g., Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008);  *Shklyar v. City of Pittsburgh*, 2:18-cv-1588, 2019 U.S. Dist. LEXIS 199335 (W.D. Pa. Nov. 18, 2019) (granting leave to amend Title VII claims);  *Mazur v. Southwestern Veterans*

*Ctr.*, CV17-826, 2018 U.S. Dist. LEXIS 139585, at *44 (W.D. Pa. Aug. 17, 2018) (granting plaintiff leave to file a second amended complaint alleging her Title VII claims quoting *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).  Indeed, courts have exercised caution in dismissing claims for employment discrimination without affording the plaintiff an opportunity to amend the operative pleading, even where the operative pleading is already an amended complaint.  *See e.g., David Braddock v. SEPTA*, Civil Action No. 13-06171, 2014 U.S. Dist. LEXIS 165235, at *19 (E.D. Pa. Nov. 25, 2014).

Here, the Court will provide Plaintiff leave to amend the following claims or portions of claims:  (1) the portions of Counts I and IV alleging disparate treatment discrimination based on sex, with respect to alleged adverse employment actions that occurred on or after March 20, 2019; and (2) the portions of Counts III and IV alleging retaliation, with respect to alleged adverse employment actions that occurred on or after March 20, 2019.

The Court determines that leave to amend would be futile, and therefore will not be granted, with respect to the portions of Counts I, III, and IV alleging disparate treatment or retaliation based on adverse employment actions that occurred before March 20, 2019, because such claims are time-barred.

## VI.   Conclusion

For these reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 25 is GRANTED IN PART AND DENIED IN PART as follows:

Defendant's Motion will be GRANTED with respect to the portions of Counts I and IV of Plaintiff's Amended Complaint alleging disparate treatment discrimination based on sex.  The dismissal will be WITH PREJUDICE as to the portions of Counts I and IV alleging disparate treatment discrimination based on sex with respect to adverse employment actions that occurred before March 20, 2019.  The dismissal will be WITHOUT PREJUDICE, and with leave to amend,

with respect to the portions of these counts alleging disparate treatment based on sex with respect to adverse employment actions that occurred on or after March 20, 2019.

Defendant's Motion will be DENIED with respect to the portions of Counts I and IV alleging a "sexually hostile work environment," and with respect to all of Count II, which alleges the same claim of a "sexually hostile work environment."

Defendant's Motion will be GRANTED with respect to all of Count III and the portion of Count IV alleging retaliation. The dismissal will be WITH PREJUDICE with respect to the portions of Counts III and IV alleging retaliation based on adverse employment actions that occurred before March 20, 2019. The dismissal will be WITHOUT PREJUDICE, and with leave to amend, for the portions of Counts III and IV alleging retaliation with respect to alleged adverse employment actions that occurred on or after March 20, 2019.

DATED this 3rd day of May, 2021.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge




cc (via ECF email notification):

All Counsel of Record